IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

**UNITED STATES OF AMERICA,**
    *Plaintiff,*

Case No. **19-CR-00157-DGK-10**

v.

**AARON M. GROVES,**
    *Defendant.*

## MOTION TO RECONSIDER DENIAL OF BOND

COMES NOW defendant Aaron M. Groves, by and through counsel, Sarah G. Hess, and respectfully requests this Court to reconsider its prior denial of bond and to issue an order setting conditions of release for Mr. Groves. In support of this motion, Mr. Groves offers the following:

### SUGGESTIONS IN SUPPORT

**I.    History of the Case**

Mr. Groves is charged with one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Doc. # 10). Mr. Groves appeared for his arraignment and detention hearing on June 27, 2019, before United States Magistrate Judge Lajuana M. Counts. Mr. Groves was detained and remanded to the custody of the United States Marshal pending trial. (Doc. # 65). Later that day, on June 27, 2019, the Court issued Mr. Groves' written detention order. (Doc. # 69).

1

The Order asserted that by clear and convincing evidence, "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community," and by a preponderance of the evidence, "no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." (Doc. # 69, p.2). Mr. Groves has been detained at CoreCivic – Leavenworth Detention Center since the issuance of the Order — more than two months.

## II.  Legal Standard

The Bail Reform Act "continues to favor release over pretrial detention." *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985). The <u>only</u> way for a defendant to be detained before trial is for the government to show "by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions … will *reasonably assure* the defendant's appearance. *Orta*, 760 F.2d at 891 (emphasis in original). When there is a rebuttable presumption that no single condition, or combination of conditions of release will reasonably assure the appearance of a defendant, the defendant then "bears a limited burden of production — not a burden of persuasion — to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Title 18 U.S.C. § 3142 (g)(1)-(4) makes clear that the factors to be considered when determining bond are the nature of the offense, weight of evidence against a person, history and characteristics of the person, and seriousness of the danger to the community if the defendant were released. Moreover, bail hearings "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B).

### III. New Evidence

On or about July 15, 2019 — less than a month after Mr. Groves' arrest on the instant case — Mr. Groves' father, Donald, was diagnosed with stage 4 squamous cell carcinoma, an aggressive type of skin cancer. At the time of his diagnosis, the doctors gave Donald only months to live. Since his diagnosis, the tumors have continued to progress and the cancer has spread and metastasized to other parts of his body, namely his neck and back. Last week, Donald began a new type of treatment — immunotherapy. The doctors were clear that this treatment would not cure the cancer, but had the possibility of prolonging his life. But after receiving the treatment, Donald had a bad reaction that placed him in the ICU. He remains in the hospital. Because of this tragic turn of events, not only is help needed to run Groves Angus Farm, Mr. Groves' family farm, but help is also needed

3

in caring for his father and making his end of life plans. Mr. Groves would very much like to be a part of that.

In addition, there is now new evidence regarding the safety and flight risk concerns cited in Mr. Groves' detention order:

**A. Home Plan.** During the initial detention hearing, the only home plan discussed was for Mr. Groves to return to his home on the family farm in Plato, Missouri, where he lived with his five-year-old son. However, there are now other additional home plans available to Mr. Groves — 1) another house on the family farm where Mr. Groves would live with his grandfather, 2) his grandparents' home near the farm where he would live with them, and 3) his brother's home near the farm where he would live with his brother's family. Additionally, if the Court were reluctant to release the defendant to his own home without another family member living there, Mr. Groves' mother is willing to stay at the home with him. These home plans did not exist at the time of Mr. Groves' detention hearing.

Mr. Groves has lived in Missouri his entire life. He was born and raised on or near the family farm in Plato, Missouri. That family farm — Groves Angus Farm — has been in existence for more than 100 years, and has been run by Mr. Groves' family that entire time. Mr. Groves lives on the farm property, as do his parents and one set of his grandparents. Within a 20-mile radius of the farm, Mr. Groves also has his brother, numerous aunts, uncles, cousins, and his other set of grandparents, all of whom he sees on a regular

4

basis. In addition, Mr. Groves has custody of his five-year-old son.[1] Put simply, all of Mr. Groves' family is located within Texas County. With this support system in place, Mr. Groves will be ready and able to appear at future court proceedings and to be successful on release.

**B. Employment.** Mr. Groves also works on the family farm. While Mr. Groves had not been working at the time of his arrest due to injuries (a broken right arm that required surgery in January, and a chainsaw injury to his left arm that required surgery in May), Mr. Groves could now resume employment on the farm tending cattle, fixing fence, and putting up hay. In general, he would be assisting in the day-to-day operation of the farm including cattle sales and delivery.

**C. Prior Criminal Activity.** With regard to Mr. Groves' pending criminal case in Laclede County Circuit Court, it is counsel's understanding and belief that this case will likely be dismissed at some point in the future. It should also be noted that this conduct took place almost one year ago. And since that time, Mr. Groves has been clean and in full compliance of his bond in that case, including passing UAs multiple times a week. While this Laclede County case precedes his arrest on the instant case, counsel believes the evidence would show that Mr. Groves was not engaged in any conduct relating to the instant offense while on bond in that case. In other words, Mr.

---

[1] In an effort to make sure that his minor son is properly cared for, Mr. Groves has consented to the appointment of Nathan Groves as guardian for his son while Mr. Groves is detained.

Groves' conduct relating to the instant offense occurred on or about March of 2018.

In addition, while Mr. Groves may have instances in his past where he was not in full compliance with bond or probation conditions, his conduct within the last several years clearly shows that he can be successful on supervision. He successfully completed probation on a Leclede County case between 2015-2018, and, as mentioned before, was in full compliance with the bond conditions on his pending Laclede County case.

This new evidence calls into question the completeness of the evidence proffered and arguments made during Mr. Groves' initial detention hearing. In light of this new evidence, according to 18 U.S.C. § 3142(f)(2)(B), Mr. Groves' bond should be reconsidered and the weight of the evidence should be measured once again.

The evidence presented at Groves' initial detention hearing on June 27, 2019, was limited. Based on this limited evidence, the Court concluded that Mr. Groves was a potential flight risk and a danger to the community. But those conclusions change when considering the new available home plans, Mr. Groves' potential employment, and the further information regarding his criminal activity. Mr. Groves has family ties in Missouri with immediate and extended family. He has been a life-long resident with significant community ties. He will be able to regain employment and support his family. This new evidence, coupled with what the Court heard at the initial detention hearing, meets the limited burden set forth in *United States v. Abad*, required to rebut the government's presumption of detention.

## CONCLUSION

As well as satisfying the limited burden, the new evidence, combined with the evidence provided at the detention hearing, shows that Mr. Groves is not a flight risk or a danger to the community. Mr. Groves is prepared to follow any and all conditions of supervision including but not limited to electronic monitoring, third-party custody, or surety bond.

WHEREFORE Mr. Groves respectfully requests this Court to reconsider his detention and enter an order setting conditions of release, and for whatever other relief this Court deems just and proper.

Respectfully Submitted,

SANDAGE LAW LLC

/s/ Sarah G. Hess
Sarah G. Hess, MO #65967
1600 Genessee Street, Suite 655
Kansas City, MO 64102
p 816.753.0800
f  816.735.4602
e sarah@sandagelaw.com
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

On August 30, 2019, I served this document by depositing an electronic copy of it in the Court's electronic filing system, which shall distribute notice to all attorneys of record.

/s/ Sarah G. Hess
Sarah G. Hess